# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 11, 2010

No. 09-20777

Lyle W. Cayce
Clerk

In Re: KENNETH K. KIZZEE-JORDAN;

Debtor

------------------------------

TAX EASE FUNDING, L.P.,

Appellee

v.

GLENN THOMPSON; ELIZABETH THOMPSON,

Appellants

In Re: GLENN THOMPSON, ELIZABETH THOMPSON

Debtors

------------------------------

GLENN THOMPSON; ELIZABETH THOMPSON

Appellants

v.

TAX EASE FUNDING L.P.

Appellee

No. 09-20777

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before JONES, Chief Judge, and REAVLEY and HAYNES, Circuit Judges.

REAVLEY, Circuit Judge:

In this case, we must consider whether a third-party lender who pays a debtor's *ad valorem* taxes and receives a transfer of the local taxing authority's tax lien under Texas law holds a tax claim protected from modification by 11 U.S.C. § 511 of the Bankruptcy Code. We conclude that the third-party lender's claim is a tax claim, and that the interest rate due thereon may not be modified by a debtor's Chapter 13 reorganization plan. We therefore AFFIRM the district court's judgment.

**I.**

Glenn and Elizabeth Thompson owed *ad valorem* property taxes on their home in Humble, Texas, for 2006 and 2007 to the Humble Independent School District, Harris County, and the Harris County Municipal Utility District (collectively "the taxing authorities"). In February 2008, they borrowed funds from Tax Ease Funding, L.P. and, pursuant to Texas law, authorized Tax Ease to pay the taxes on their behalf. *See* TEX. TAX CODE § 32.06(a-1). The Thompsons executed a promissory note agreeing to repay the debt amount of $11,600.11 over a ten year period with an annual interest rate of 14.8%. In return for providing the funds, Tax Ease received a transfer of the taxing authorities' tax liens against the Thompsons' property.

In April 2009, the Thompsons filed in the United States Bankruptcy Court a voluntary petition for Chapter 13 reorganization. Their reorganization plan proposed to repay the debt to Tax Ease at an annual interest rate of only 5%. Tax Ease objected to the plan on the ground that under 11 U.S.C. § 511 its claim

2

No. 09-20777

for repayment was a tax claim for which the interest rate must be determined by nonbankruptcy law and may not be modified by the bankruptcy court. Tax Ease sought by its objection to preserve its contract rate of interest.

The bankruptcy court disagreed with Tax Ease. It reasoned that because Tax Ease paid the Thompsons' taxes, the tax claim was extinguished. Although Tax Ease received a transfer of the tax lien, the bankruptcy court held that the claim for payment was based on the new promissory note and could be modified. After the bankruptcy court denied Tax Ease's objection, but before it confirmed the Thompsons' plan, Tax Ease filed a notice of appeal to the district court. The bankruptcy court subsequently confirmed the plan in a separate written order. Tax Ease's appeal to the district court was consolidated with another case presenting the same issue.

The district court reversed the bankruptcy court's order and held that Tax Ease's claim was a tax claim under § 511. The district court reasoned that the debt originated from the debtors' responsibility to the taxing authorities for their property taxes and that the transfer of the debt to Tax Ease did not change the nature of the debt. It noted that under Texas law Tax Ease became subrogated to the rights of the taxing authorities. Therefore, Tax Ease was entitled to the same protection of § 511 that would be afforded to the taxing authorities, and the bankruptcy court could not modify the interest rate. The Thompsons now appeal to this court.

## II.

Before addressing the merits of the appeal, we first consider our appellate jurisdiction. Tax Ease suggests that we lack jurisdiction because its appeal to the district court was not based on a final, appealable order of the bankruptcy court, and therefore the district court also lacked jurisdiction.

No. 09-20777

District courts have jurisdiction to hear appeals from bankruptcy courts to review "final judgments, orders, and decrees."[1] District courts also have appellate jurisdiction to consider the bankruptcy court's interlocutory orders and decrees if the district court has granted leave to appeal.[2] Because the instant case does not involve an order for which the district court granted leave to appeal, the district court's jurisdiction depended on whether the bankruptcy court's order was final. This court's appellate jurisdiction similarly turns on the finality of the decisions in the bankruptcy and district courts. *See In re Bartee.*[3]

Under our precedent, finality in bankruptcy proceedings is viewed in a practical, less technical light. *In re England.*[4] Our approach to determining whether an order is therefore appealable in a bankruptcy case is flexible.[5] An appealed bankruptcy order will be considered final if it constitutes "either a 'final determination of the rights of the parties to secure the relief they seek,' or a final disposition 'of a discrete dispute within the larger bankruptcy case[.]'"[6] The conclusion of a "discrete judicial unit in the larger case," rather than the conclusion of the entire litigation, results in a final, appealable order.[7]

We are satisfied that the bankruptcy court's order here denying Tax Ease's objection resolved a discrete dispute between these parties and was appealable.

---

[1] 28 U.S.C. § 158(a)(1).

[2] *Id.* § 158(a)(3).

[3] 212 F.3d 277, 282 (5th Cir. 2000); 28 U.S.C. § 158(d)(1) ("The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.").

[4] 975 F.2d 1168, 1171 (5th Cir. 1992).

[5] *See Bartee*, 212 F.3d at 282.

[6] *Id.* (quoting *In re Orr*, 180 F.3d 656, 659 (5th Cir. 1999)).

[7] *England*, 975 F.2d at 1172.

No. 09-20777

The record reveals that the only contested issue in the bankruptcy court with respect to confirmation of the Thompsons' proposed Chapter 13 plan was whether Tax Ease held a tax claim, and the resulting interest rate on that claim. The parties agreed at a hearing before the bankruptcy court that there were no other issues pending in the Thompsons' plan. Tax Ease's claim was a two-party dispute, and the bankruptcy court's decision necessarily resolved the dispute and determined the amount, priority, and interest rate on the claim. Although the order itself did not confirm the Thompsons' plan, it was considered by all parties to be final on the claim at issue and left nothing more for the court to do. It effectively resolved the merits of the controversy and was a final, appealable order; there is no impediment to our jurisdiction.[8]

### III.

We turn next to the merits of the appeal and consider whether the district court correctly determined that Tax Ease held a tax claim and was therefore entitled to receive its contract rate of interest. In bankruptcy appeals we review findings of fact for clear error and conclusions of law de novo. *In re Laughlin*.[9]

The sole issue in this appeal turns on the applicability of § 511 of the Bankruptcy Code. Enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,[10] § 511 limits a debtor's ability to modify the interest rate on a "tax claim" as follows:

> If any provision of this title requires the payment of interest on a
> tax claim or on an administrative expense tax, or the payment of

---

[8] *See, e.g., Bartee*, 212 F.3d at 283 (holding that bankruptcy court's order was final where is was labeled as a final judgment and was clearly intended to serve as denial of relief sought; the order determined the substantive rights at issue; there was no indication in the record that the court intended to take further action; and no party argued that any further action by the court was to occur).

[9] 602 F.3d 417, 421 (5th Cir. 2010).

[10] *See* Pub. L. No. 109-8, § 704, 119 Stat. 23, 125–26 (2005).

interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.[11]

Because there was no uniform rate of interest for tax claims prior to the enactment of § 511, and varying standards had been used to determine the applicable rate, Congress sought to simplify the interest rate calculation.[12] It is now clear that when a federal, state, or local governmental entity pursues a claim against a bankrupt for unpaid taxes, the applicable interest rate is determined in accord with nonbankruptcy law.[13] What is not immediately clear from the statute is whether a third-party creditor who pays the debtor's taxes continues to hold a "tax claim."

The Bankruptcy Code does not define the term "tax claim." But it does define a "claim" in the broadest manner to be a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]"[14] In the simplest terms, a tax claim is a broad right to payment of taxes. Section 511 protects the interest rate due on this "right to payment" held by governmental entities and by private parties alike because it includes "creditors" within the realm of those able to make tax claims.[15] This must be so

---

[11] 11 U.S.C. § 511(a).

[12] *See* H.R. REP. NO. 109-31, at 101 (2005); *see also* 4 COLLIER ON BANKRUPTCY ¶ 511.01 (Alan Resnick & Henry J. Sommer eds. 16th ed. 2010) ("The purpose of section 511 is to establish uniformity in the rate of interest paid on deferred tax claims[.]").

[13] *See* H.R. REP. NO. 109-31, at 101 (2005) (Section 511 "provides that for *all tax claims* (federal, state, and local), . . . the interest rate shall be determined in accordance with applicable nonbankruptcy law.").

[14] 11 U.S.C. § 101(5)(A); *see also Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150, 2154 (1991) ("Congress intended by this language to adopt the broadest available definition of 'claim.'").

[15] *See* § 511(a).

since the Bankruptcy Code elsewhere specifically defines a "governmental unit,"[16] but Congress chose instead to use the more broadly defined term "creditor" in § 511.[17]   We think the broad definition of "claim," in conjunction with the broad protection afforded in § 511, shows Congress' intent to include within § 511 tax claims held by private entities.  *See In re Davis.*[18]

We know from the Bankruptcy Code that a tax claim is a broad claim for the payment of taxes and that a private entity may seek the benefit of § 511 in pursuing such a claim.  But we still have not decided what specific rights a private entity such as Tax Ease possesses when it pays the taxes of the debtor. The statute provides that the "rate of interest shall be the rate determined under applicable nonbankruptcy law."  We read that to direct us to the Texas law in this case.  *See In re Haber Oil Co.*[19]

Under Texas law authorizing a third party's payment of taxes, "[a] tax lien may be transferred to the person who pays the taxes on behalf of the property owner[.]"[20]   Upon an authorized transferee's payment of the property owner's taxes, the tax collector certifies that the taxing unit's tax lien is transferred to that transferee.[21]   The transferee of the tax lien is then "subrogated to and is

---

[16] *See* 11 U.S.C. § 101(27).

[17] A "creditor" is an "entity that has a claim against the debtor[.]"   11 U.S.C. § 101(10)(A).

[18] 352 B.R. 651, 654 (Bankr. N.D. Tex. 2006).

[19] 12 F.3d 426, 435 (5th Cir. 1994) ("[I]n the absence of controlling federal bankruptcy law, the substantive nature of the property rights held by a bankrupt and its creditors is defined by state law."); *see also Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914, 918 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.")

[20] TEX. TAX CODE § 32.06(a-2).

[21] *Id.* § 32.06(b).

entitled to exercise any right or remedy possessed by the transferring taxing unit, including or related to foreclosure or judicial sale[.]"[22]

Whether a third-party lender who pays a property owner's taxes in Texas holds a tax claim under the above provisions for purposes of § 511 has resulted in conflicting opinions among the bankruptcy courts in this circuit.[23]   The Thompsons argue, consistent with the holdings of some courts, that Tax Ease does not hold a tax claim because only a tax *lien* is transferred under state law, and there is no provision for a transfer of the tax claim.  They argue that the tax claim was extinguished and was replaced by a new debt owed under their promissory note.  We are not persuaded.

The fact that the lien is transferred does not mean that Tax Ease does not possess a tax claim.  As noted above, a claim is a right to payment.[24]  A lien is a "charge against or interest in property to secure payment of a *debt* or performance of an obligation."[25]   And a debt is a "liability on a claim."[26]  Therefore, a holder of a lien has a secured right to payment on a claim.  In *Johnson*, the Supreme Court recognized that the holder of a mortgage lien on the debtor's property still had a claim against the debtor even though the debtor's personal liability had previously been discharged because the lien holder maintained a right to payment in the form of proceeds from a sale of the debtor's

---

[22] *Id.* § 32.065(c).

[23] *Compare In re Davis*, 352 B.R. 651 (Bankr. N.D. Tex. 2006) (holding that the third-party lender as the successor-in-interest of the taxing authority holds a tax claim subject to § 511) *with In re Kizee-Jordan*, 399 B.R. 817 (Bankr. S.D. Tex. 2009), *In re Prevo*, 393 B.R. 464 (Bankr. S.D. Tex. 2008), and *In re Sheffield*, 390 B.R. 302 (Bankr. S.D. Tex. 2008) (all holding that third-party lender holds a new, non-tax claim based on the property owner's promissory note that is not subject to § 511).

[24] 11 U.S.C. § 101(5)(A).

[25] 11 U.S.C. § 101(37) (emphasis added).

[26] 11 U.S.C. § 101(12).

property.[27]  Similarly here, the tax lien on the Thompsons' property evidences the claim for payment.

The bankruptcy court in this case acknowledged that the tax lien creates an imposition against the real property, but it reasoned that the lien secures only a garden variety claim, not a tax claim, because the taxes were paid.  The Thompsons also urge this position, but we disagree that the tax claim has been extinguished.  The state law provides that when the transferee pays the taxes, the tax collector "shall issue a tax receipt to that *transferee*."[28]  If the tax claim against the property owner were extinguished, the tax collector would issue the tax receipt to that property owner, not the transferee.  By allowing a transferee to pay the taxes and receive the tax receipt and lien, the statutory scheme changes only the entity to which the Thompsons are indebted for the taxes originally owed, not the nature of the underlying debt upon which the claim is based.  We do not think the tax lien otherwise could be properly transferred if the tax debt was extinguished.  *See United States v. Phillips*.[29]

Moreover, the Texas statutory scheme provides that upon payment to the taxing authorities and transfer of the tax lien, the transferee is subrogated to all the rights and remedies of the taxing authorities.[30]  If the tax claim were extinguished upon payment by the transferee and replaced by a new debt, there

---

[27] *Johnson*, 501 U.S. at 83, 111 S. Ct. at 2154.

[28] TEX. TAX CODE § 32.06(b) (emphasis added).

[29] 267 F.2d 374, 376–77 (5th Cir. 1959) ("A lien is a charge upon property for the payment or discharge of a debt.  It is therefore dependent upon the existence, the amount of, and the provability of the debt.  If the debt has been paid . . . the lien is extinguished.") (internal quotation marks and citation omitted); *Tex. Bank & Trust Co. of Dallas v. Custom Leasing, Inc.*, 402 S.W.2d 926, 930 (Tex. Civ. App. 1966) ("A lien in itself is neither property nor a debt, but a right to have satisfaction out of property to secure the payment of the debt; and therefore is not subject to assignment without the debt.").

[30] TEX. TAX CODE § 32.065(c).

would be no need to provide for rights of subrogation because the transferee could simply prosecute the new debt. Instead, the subrogation rights flow from the original tax debt. As a subrogee, Tax Ease should enjoy at least the same advantages and disadvantages of its claim as the taxing authorities would have, including the application of § 511 for the tax claim. *See, e.g., Burns v. Bishop.*[31]

The Thompsons argue, however, that Tax Ease is not really subrogated to the taxing authorities because state law grants Tax Ease a different bundle of rights than the taxing authorities have. For example, the taxing authorities are permitted under state law to charge interest of 12% on delinquent taxes and to recover attorneys fees in the event of foreclosure of up to 15% of the judgment.[32] But a third-party transferee who pays the property owner's taxes is permitted by statute to charge 18% interest and to recover attorneys fees of up to 10% of the judgment.[33] One bankruptcy court has held that this difference means that the "third-party lender does not receive the original tax claim, but rather a new claim secured by the transferred tax lien."[34] Because of the nature of the subrogation rights at issue in this case, however, the transferee need not receive the precise bundle of rights as the taxing authorities in order to be subrogated to a tax claim.

"Subrogation is the right of one who has paid an obligation which another should have paid to be indemnified by the other." *Tex. Ass'n of Sch. Bds., Inc.*

---

[31] 48 S.W.3d 459, 466 (Tex. App. 2001) ("It is axiomatic that an assignee or subrogee walks in the shoes of his assignor and takes the assigned rights subject to all defenses which the opposing party might be able to assert against his assignor."); *see also Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 337 (Tex. 1980) ("If entitled to full subrogation, the payor is allowed to enforce the rights available to the creditor[.]").

[32] TEX. TAX CODE §§ 33.01(a), and 33.48(a)(5).

[33] *Id.* § 32.06(e) & (j).

[34] *In re Prevo*, 393 B.R. at 471.

*v. Ward*.[35]  Texas recognizes three types of subrogation: equitable, contractual, and statutory.[36]  When a statute provides a subrogation right, its nature is governed by the terms of the statute creating the right.[37]  In this case, Tax Ease has been granted general statutory subrogation rights that include any rights held by the taxing authorities.[38]  The fact that the Texas legislature also chose to grant third-party lenders specific rights different from the taxing authorities does not change the fact that the lenders are subrogated, nor does it change the nature of the underlying debt as a tax debt.  If we adopted the Thompsons' argument we would effectively read the subrogation provision out of the statute.

Our conclusion that Tax Ease holds a tax claim is in accord with decisions of other courts which have considered the nature of the third-party creditors' assignment or subrogation rights under state law.  In *In re Cortner*,[39] the court held that a third-party creditor in a tax certificate sale held a tax claim under § 511, and not merely a new debt with a lien against the property, where Ohio law provided for the transfer of the delinquent taxes to the tax sale purchaser. In *In re Princeton Office Park, L.P.*,[40] the court held that a tax sale certificate holder possessed only a lien on the property owner's real estate, not a tax claim. But in so holding, the court agreed that a transferee of a tax lien possesses a tax claim.  The court held that it was constrained by New Jersey law to find that the holder there did not possess a tax lien, and thus not a tax claim, because under

---

[35] 18 S.W.3d 256, 258 (Tex. App. 2000).

[36] *Id.*

[37] *Id.* at 259.

[38] *See* TEX. TAX CODE § 32.065(c).

[39] 400 B.R. 608, 612 (Bankr. S.D. Ohio 2009).

[40] 423 B.R. 795, 804–05 (Bankr. D. N.J. 2010).

*state law* the taxes are paid in full at a tax sale.[41] Significantly, the court noted that the case was distinguishable from similar situations in Texas because New Jersey law did not provide that transferees are assignees or subrogees of the taxing authority.[42] The court held that had the taxing authority assigned or subrogated its rights to the third-party creditor, as the Texas law provides, it would follow the approach taken by the district court in this case, *i.e.* that the claim was a tax claim.[43]

For the foregoing reasons, we conclude that Tax Ease, as the transferee of the tax lien and a subrogee of the taxing authorities' rights, holds a tax claim for purposes of § 511. The district court therefore correctly held that the bankruptcy court could not modify the interest rate due on the claim. The district court's judgment is AFFIRMED.

---

[41] *Id.* at 804.

[42] *Id.*

[43] *Id.* at 805.