REVISED DECEMBER 13, 2010
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 12, 2010

Lyle W. Cayce
Clerk

No. 09-41259

In the Matter of:  ASARCO L.L.C., ET AL,

Debtor

------------------------------------

UNITED STEEL, PAPER AND FORESTRY, RUBBER MANUFACTURING,
ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS
INTERNATIONAL UNION AFL-CIO, STERLITE (USA) INC.; STERLITE
INDUSTRIES (INDIA) LTD,

Appellants

v.

ASARCO INCORPORATED; AMERICAS MINING CORPORATION,

Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:09-CV-177

Before GARZA and BENAVIDES, Circuit Judges, and CRONE[*], District Judge.

---

[*] District Judge for the Eastern District of Texas, sitting by designation.

PER CURIAM:[**]

Appellants Sterlite (USA) Inc. and Sterlite Industries (India), Ltd. ("Sterlite"), and the United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO ("Union"), appeal the district court's order confirming the reorganization plan proposed by Americas Mining Company ("AMC") and ASARCO. AMC and ASARCO ("Appellees") have moved to dismiss the present appeal, arguing that it is equitably moot. For reasons explained within, we GRANT the motion to dismiss.[1]

I

In 1999, AMC purchased debtor ASARCO, a mining conglomerate with operations in several states and countries. During the next several years, ASARCO faced substantial environmental problems due to its operations, which resulted in billions of dollars of liability to the United States and several states. ASARCO also faced significant liability related to asbestos litigation. Concurrently, the price of copper declined, cutting into the company's profitability. As ASARCO limited its spending in an effort to save money, employee relations deteriorated, leading to a strike that further harmed the company. ASARCO entered bankruptcy in 2005.

While this matter was before the bankruptcy court, Sterlite proposed a reorganization plan ("Debtor's Plan") under which it would gain control of ASARCO and all creditors would be paid in full. The Appellees also proposed a reorganization plan ("Parent's Plan"), which would pay creditors in full, but would leave equity control with AMC.

---

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] In the motion to dismiss, Appellees also argue that Sterlite lacks standing to appeal. We do not address this argument because of our holding on the question of equitable mootness.

The bankruptcy court issued a report and recommendation indicating that both plans were confirmable under 11 U.S.C. § 1129(a) and (b). The bankruptcy court then applied a four-factor analysis under § 1129(c) and concluded that the Parent's Plan should be confirmed. The parties objected to the bankruptcy court's report and recommendation, but the district court overruled the objections. The district court considered the competing plans under § 1129(c), concurred with the bankruptcy court's recommendation, and confirmed the Parent's Plan.

The Appellants did not seek a stay of the district court's order and the Parent's Plan was enacted. Among other things, the plan administrator distributed approximately $3.359 billion to pay numerous creditors, to fund environmental remediation efforts, and to create reserve funds for disputed claims. In addition, a federal settlement and more than one hundred state settlements became effective, resolving $6.5 billion of asserted environmental claims. Some of these settlements involved the transfer of real property to various governmental entities. Dissatisfied with the district court's order, Appellants filed the present appeal. The Appellees contend the appeal is equitably moot and must be dismissed.

II

In bankruptcy, this court uses the "concept of mootness to address equitable concerns unique to bankruptcy proceedings." Manges v. Seattle First Nat'l Bank, 29 F.3d 1034, 1038 (5th Cir. 1994) (internal citations and quotations omitted). Mootness, in this context, is not an inquiry into whether a live controversy exists, but rather it recognizes "a point beyond which [appellate courts] cannot order fundamental changes in reorganization actions." Id. at 1038-39. "[A] reviewing court may decline to consider the merits of a confirmation order when there has been substantial consummation of the plan

such that effective judicial relief is no longer available—even though there may still be a viable dispute between the parties on appeal." Id. at 1039.

A court considers three factors in determining whether to apply equitable mootness: "(1) whether a stay has been obtained; (2) whether the plan has been 'substantially consummated'; and (3) whether the relief requested would affect either the rights of parties not before the court or the success of the plan of reorganization." Id. (citations omitted). There is "no set weight given to the respective prongs." In re Blast Energy Servs., Inc., 593 F.3d 418, 424 (5th Cir. 2010). The third prong, however, indicates equitable mootness when "no stay has been obtained and the plan has been substantially consummated. . . ." Id. at 424; see also In re GWI PCS 1 Inc., 230 F.3d 788, 802-03 (5th Cir. 2000).

Here, Appellants have not sought a stay and the plan has been substantially consummated with the distribution of billions of dollars to pay creditors' claims. In addition, settlements of environmental claims have been reached with the federal government and numerous states, and numerous other transactions, including real property transfers, have already occurred.

Under the final prong of the mootness inquiry, we consider whether the requested relief would affect the rights of parties not before the court or would jeopardize the success of the reorganization plan. Appellants argue that this factor weighs against a finding of equitable mootness because they do not want to unravel the Parent's Plan. Rather, Appellants assert that they seek a limited remedy: an order that would substitute Sterlite as the primary equity holder. This finite relief, Appellants argue, would not affect third parties. We disagree.

There is ample reason to think that substituting Sterlite as the primary equity-holder would have a far-reaching impact. It would be difficult to maintain anything resembling the status quo if the primary equity holder were replaced by Sterlite. See In re GWI PCI 1 Inc., 230 F.3d at 803. Here, the inquiry under the third prong favors a finding of equitable mootness because a

change in the equity holder's identity would affect numerous complex financial transactions.

Therefore, all three prongs of the equitable mootness inquiry favor dismissal.

III

Accordingly, the motion to dismiss is GRANTED, and the appeal is DISMISSED.