# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 16, 2011

No. 10-40930

Lyle W. Cayce
Clerk

In the Matter of: ASARCO, L.L.C.,

Debtor

ASARCO, INCORPORATED; AMERICAS MINING CORPORATION;
ASARCO, L.L.C.,

Appellants

v.

ELLIOTT MANAGEMENT; THE BAUPOST GROUP,

Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH and STEWART, Circuit Judges.[*]

CARL E. STEWART, Circuit Judge:

The bankruptcy court in this case issued an order that authorized the debtor, ASARCO LLC ("ASARCO"), to reimburse qualified bidders for expenses incurred in connection with the sale of a substantial asset of the debtor's estate. The bankruptcy court determined that such reimbursements were proper under

---

[*] This case is being decided by a quorum due to the death of Judge William L. Garwood on July 14, 2011.  28 U.S.C. § 46(d).

No. 10-40930

the business judgment standard in section 363(b) of the Bankruptcy Code.[1] ASARCO's parent companies, Americas Mining Corporation ("AMC") and ASARCO Incorporated (collectively, the "Parent"), appealed the order to the district court. The district court found no error and affirmed. Subsequently, the district court confirmed the Parent's bankruptcy reorganization plan, pursuant to which the Parent regained control of ASARCO. The Parent and ASARCO (collectively, "Appellants") now appeal the bankruptcy court's reimbursement order. We affirm.

## I. BACKGROUND

The adversary action and bankruptcy proceedings underlying the order appealed from were lengthy and protracted over five years, much of it before the same district judge. We recount here only the proceedings relevant to this appeal.

### 1.    ASARCO's Fraud Action

ASARCO is a mining conglomerate that was purchased by Grupo Mexico, S.A.B. de C.V. in 1999. ASARCO's assets at the time included a controlling number of shares in Southern Peru Copper Company ("SCC"). Grupo Mexico transferred the SCC shares to a holding company it created as a wholly-owned subsidiary of ASARCO, and it created AMC as its own wholly-owned subsidiary. After financial troubles beset ASARCO, Grupo Mexico decided to sell the SCC shares in 2003 by transferring them to AMC. ASARCO was unable to escape its financial difficulties, however, and in 2005 it filed for Chapter 11 bankruptcy.

While its bankruptcy proceeding was pending, ASARCO brought an adversary action in the district court against AMC. ASARCO, proceeding in its capacity as debtor-in-possession, alleged that AMC wrongfully caused ASARCO to transfer the SCC shares. The district court conducted a four-week bench trial

---

[1] 11 U.S.C. § 363(b).

2

No. 10-40930

in 2008 and ultimately found AMC liable for actual fraudulent transfer, aiding and abetting a breach of fiduciary duty, and conspiracy.[2]   In April 2009, the district court awarded damages and entered final judgment.  The final judgment ("SCC Judgment") ordered AMC to transfer approximately 260 million shares of SCC common stock to ASARCO and pay nearly $1.4 billion in damages for past dividends and interest.[3]

## 2.    ASARCO's Bankruptcy Proceeding

In the bankruptcy proceeding, ASARCO and the Parent submitted competing plans of reorganization under Chapter 11.  ASARCO's plan proposed to be partially funded with the SCC Judgment, which was the most substantial asset of the debtor's estate.  Given the difficulty of valuing the SCC Judgment, ASARCO decided to sell the asset via a two-part bid solicitation process, subject to a topping auction.  Such a process, ASARCO believed, would maximize the value of the SCC Judgment.  ASARCO engaged the services of its financial advisor, Barclays Capital Inc., to help identify potential bidders for all or a portion of the SCC Judgment.

In July 2009, while Barclays was conducting the first phase of the bid solicitation process, ASARCO moved the bankruptcy court for the order at the heart of this dispute.  ASARCO requested authorization to reimburse certain expenses incurred by bidders selected to proceed to the second phase of the bid process.  In its motion, ASARCO explained that after consulting with its advisors, it had decided to invite a select group of bidders to proceed to the second phase of the process.  During the second phase, the bidders would have the opportunity to conduct additional due diligence relating to the SCC Judgment.   That due diligence would entail highly sophisticated legal

---

[2] *See ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278 (S.D. Tex. 2008).

[3] *See ASARCO LLC v. Americas Mining Corp.*, 404 B.R. 150 (S.D. Tex. 2009).

analysis—and thus substantial legal costs—and ASARCO believed it necessary to provide bidders with an incentive to undertake this investment. ASARCO thus sought authorization under section 363 of the Bankruptcy Code to reimburse qualified bidders for their due diligence expenses.

On July 29, 2009, after a hearing, the bankruptcy court issued an order granting ASARCO's motion (the "Reimbursement Order"). The bankruptcy court concluded that ASARCO had demonstrated a "compelling and sound business justification" for the authorization requested. The Parent appealed the Reimbursement Order to the district court and moved for a stay pending appeal. The Order was stayed from August 11, 2009. By the time the district court resolved the appeal a year later, the parties' positions had materially changed due to the debtor's reorganization.

The district court, adopting the bankruptcy court's recommendation, confirmed the Parent's plan of reorganization in November 2009.[4] Pursuant to that plan, the Parent regained control of ASARCO. The plan also provided for the Parent's release from the SCC Judgment upon the plan's effective date. The Parent's plan took effect on December 9, 2009. Shortly thereafter, the Parent filed a Rule 60(b) motion in the district court for relief from the SCC Judgment, to which ASARCO agreed.[5] In January 2010, the district court entered an order relieving the Parent of any obligations under the SCC Judgment.

After the Parent's plan became effective, Elliott Management and the Baupost Group (the "Intervenors") moved to intervene in the Parent's appeal of

---

[4] *See In re ASARCO LLC*, 420 B.R. 314 (S.D. Tex. 2009). On appeal of the district court's order confirming the Parent's plan, this court dismissed the appeal as equitably moot. *In re ASARCO LLC*, 401 F. App'x 914 (5th Cir. 2010).

[5] *See* FED. R. CIV. P. 60(b)(5) ("On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable[.]").

No. 10-40930

the Reimbursement Order.  The Intervenors are beneficiaries of the Reimbursement Order that hold claims for due diligence expenses and fees incurred before the Order was stayed.  The district court granted the Intervenors' motion.[6]  In August 2010, after a hearing, the district court affirmed the bankruptcy court's Reimbursement Order.[7]  This appeal followed.

## II.  DISCUSSION

### A.    Jurisdiction

Appellants first argue that we lack jurisdiction due to the district court's own lack of jurisdiction over the Reimbursement Order, which Appellants contend is not a final, appealable order of the bankruptcy court.  Although this alleged jurisdictional defect was not raised in the district court, we are "obligated to examine the basis for our jurisdiction."  *In re Cortez*, 457 F.3d 448, 453 (5th Cir. 2006).  Whether the district court possessed jurisdiction is a question of law we review de novo.  *Beitel v. OCA, Inc.* (*In re OCA, Inc.*), 551 F.3d 359, 366 (5th Cir. 2008).

Under 28 U.S.C. § 158(a), district courts have jurisdiction "to hear appeals from final judgments, orders, and decrees" of the bankruptcy court, as well as interlocutory orders and decrees to which the district court has granted leave to appeal.  We in turn have jurisdiction to hear "appeals from all final decisions, judgments, orders, and decrees" in bankruptcy matters entered under § 158(a).  *Id.* § 158(d)(1).  Because the district court did not grant leave to appeal in this case, its jurisdiction—as well as our own—depends on the finality of the bankruptcy order appealed from.

Appellants contend that the Reimbursement Order is not a final order because it does not determine any party's rights to reimbursement.  In support

---

[6] But for Elliott Management's and the Baupost Group's intervening as appellees, the Parent's control of ASARCO would have mooted the Parent's appeal.

[7] *In re ASARCO LLC*, 441 B.R. 813 (S.D. Tex. 2010).

of their argument they cite the Second Circuit's decision in *In re Integrated Resources, Inc.*, 3 F.3d 49 (2d Cir. 1993).  The parties in *Integrated Resources* disputed the bankruptcy court's approval of a "break-up fee" provision that specified a possible range for the break-up fee, but made the exact amount of the fee contingent on future events.  The Second Circuit dismissed the appeal for lack of jurisdiction after concluding that the bankruptcy court's order was not final.  *Id.* at 51.  The court concluded that the bankruptcy court's order was interlocutory because there existed an ongoing dispute on the exact amount of the break-up fee.  In reaching this conclusion, the Second Circuit emphasized that in bankruptcy appeals it "appl[ies] the same standards of finality that . . . apply to an appeal under 28 U.S.C. § 1291."  *Id.* at 53 (quoting *In re Fugazy Express*, 982 F.2d 769, 775–76 (2d Cir. 1992)).

But *Integrated Resources* is of limited persuasiveness as this court has explicitly rejected the Second Circuit's "rigid rule of finality" in bankruptcy appeals.  *See Bartee v. Tara Colony Homeowners Assoc. (In re Bartee)*, 212 F.3d 277, 282 n.6 (5th Cir. 2000) ("Two circuit courts of appeal favor a rigid rule of finality.  Such a rule is undesirable primarily because it is fraught with unintended inefficiencies . . . and other appellate pitfalls." (citing *Maiorino v. Branford Savings Bank*, 691 F.2d 89 (2d Cir. 1982)).  In this court, unlike the Second Circuit, finality under § 158(d) is not coterminous with finality under § 1291: "'Finality' . . . under § 158(d) is considered more liberally or flexibly than 'finality' under § 1291," and in bankruptcy appeals we apply "the less stringent standard of § 158(d)."  *Id.* at 282.  *See also Internal Revenue Serv. v. Orr (In re Orr)*, 180 F.3d 656, 659 (5th Cir. 1999) ("There is . . . a lower threshold for meeting the 'final judgments, orders, and decrees' appealability standard under 28 U.S.C. § 158(a) than there is for the textually similar 'final decisions' appealability standard under 28 U.S.C. § 1291.").

Thus, "[o]ur approach to determining whether an order is . . . appealable in a bankruptcy case is flexible," and we view "finality in bankruptcy proceedings . . . in a practical, less technical light." *In re Kizzee-Jordan*, 626 F.3d 239, 242 (5th Cir. 2010). We "ha[ve] long rejected adoption of a rigid rule that a bankruptcy case can only be appealed as a single judicial unit at the end of the entire bankruptcy proceeding." *Bartee*, 212 F.3d at 282 (internal quotation marks omitted). Instead, in this court "[a]n appealed bankruptcy order will be considered final if it constitutes either a final determination of the rights of the parties to secure the relief they seek, or a final disposition of a discrete dispute within the larger bankruptcy case." *Kizzee-Jordan*, 626 F.3d at 242 (internal quotation marks and brackets omitted).

Under our "flexible" approach to determining appealability in bankruptcy cases, we are satisfied that the Reimbursement Order constitutes a final disposition of a discrete dispute within the larger case. In issuing the Order the bankruptcy court settled the contested matter of whether ASARCO was permitted, in the exercise of its business judgment, to reimburse potential bidders of due diligence expenses related to the proposed sale of the SCC Judgment. The Parent argued that such reimbursements would be gratuitous, unnecessary, and counterproductive, but the bankruptcy court disagreed. In settling this "discrete dispute," the Reimbursement Order was sufficiently separable from the rest of the bankruptcy proceeding to be appealable as a "final" order under §§ 158(a) and (d). Accordingly, we conclude we have jurisdiction over this appeal.

## B.    Reimbursement Order

Appellants raise three challenges to the Reimbursement Order. First, they contend that the bankruptcy court applied the wrong standard under the Bankruptcy Code to ASARCO's motion for authorization to pay reimbursement expenses. They argue that the bankruptcy court should have considered

No. 10-40930

ASARCO's motion under section 503(b),[8] which applies to administrative expenses, and not under section 363(b), the business judgment standard. Section 503(b) is the more stringent of the two, and Appellants contend that under that standard the Reimbursement Order was in error.  Second, Appellants argue that even assuming section 363(b) was the correct standard to apply, the bankruptcy court erred in finding that ASARCO's motion satisfied the business judgment standard.

Finally, Appellants argue that the bankruptcy court abused its discretion by approving procedures that authorized ASARCO to reimburse particular bidders without notice to the Parent and without sufficient judicial oversight. Appellants did not raise this argument before the district court, however, and have not shown any exceptional circumstance that warrants our addressing this waived issue.  *See In re Duncan*, 562 F.3d 688, 697 (5th Cir. 2009) ("It is a bedrock principle of appellate review that claims raised for the first time on appeal will not be considered."); *In re Bradley*, 501 F.3d 421, 433 (5th Cir. 2007) ("Even if an issue is raised and considered in the bankruptcy court, this court will deem the issue waived if the party seeking review failed to raise it in the district court.").  Accordingly, we address Appellants' first two arguments only.

### 1.   *Standard of review*

We review the decision of a district court, sitting in its appellate capacity, by applying the same standards of review to the bankruptcy court's finding of fact and conclusions of law as applied by the district court.  *Morrison v. W. Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 480 (5th Cir. 2009).  A bankruptcy court's conclusions of law are reviewed de novo, as are mixed questions of law and fact.  *Tummel & Carroll v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 318 (5th Cir. 2005).  A bankruptcy court's findings of fact are reviewed

---

[8] 11 U.S.C. § 503(b).

No. 10-40930

for clear error and may be reversed "[o]nly upon a definite and firm conviction that the bankruptcy court erred." *Id.*

### 2.    *Legal standard: §§ 363(b) or 503(b)*

Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard. Subsection 363(b) provides that "a debtor-in-possession, 'after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.'" *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) (quoting 11 U.S.C. § 363(b)(1)). In such circumstances, "for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *Id.*; *see also In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010) ("A sale of assets under § 363 . . . is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons.").

The business judgment standard in section 363 is flexible and encourages discretion. "Whether the proffered business justification is sufficient depends on the case. . . . [T]he bankruptcy judge 'should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.'" *Cont'l Air Lines*, 780 F.2d at 1226 (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

In contrast, the narrower standard in section 503 of the Bankruptcy Code pertains to entities that have incurred administrative expenses and wish to request payment from the estate. Claims under this section "generally stem from voluntary transactions with third parties who lend goods or services necessary to the successful reorganization of the debtor's estate." *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001). Subsection 503(b)

allows parties to recover administrative expenses "including the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). But as used in this section, "[t]he words 'actual' and 'necessary' have been construed narrowly: 'the debt must benefit [the] estate and its creditors.'" *In re TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992) (quoting *NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991)); *see also Jack/Wade Drilling*, 258 F.3d at 387 ("[T]o qualify as an actual and necessary cost under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the [debtor-in-possession] that benefitted the estate." (internal quotation marks omitted)).

Appellants argue that the bankruptcy court erred in relying on section 363(b) to issue the Reimbursement Order. They assert that the business judgment standard in section 363(b) is too broadly worded to address what they contend is the salient issue here: whether third parties such as the Intervenors may recover expenses incurred in the course of due diligence. In Appellants' view, the correct and applicable standard—the one the bankruptcy court should have applied—appears in section 503(b)(1). Under that standard for administrative expenses, Appellants argue, the Reimbursement Order was in error because the requested reimbursements were not actually necessary to preserve the value of the estate.

In support of their argument Appellants cite two Third Circuit decisions where the court applied section 503(b) and not 363(b) to requests for break-up fees. *See In re Reliant Energy Channelview LP*, 594 F.3d 200 (3d Cir. 2010); *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999). In both *Reliant* and *O'Brien*, the bankruptcy court refused to approve break-up fees to unsuccessful stalking-horse bidders in bankruptcy auctions.[9] In *O'Brien*, the Third Circuit

---

[9] A break-up fee is "a fee paid by a seller to a prospective purchaser in the event that a contemplated transaction is not consummated." *O'Brien*, 181 F.3d at 528. In the context of

established that section 503 governs an unsuccessful bidder's request for break-up fees. 181 F.3d at 535. Applying the administrative expense standard, the Third Circuit concluded in both cases that the unsuccessful bidder had not made the requisite showing that the fees were actually necessary to preserve the value of the estate.

We are not persuaded that *Reliant* and *O'Brien* are apt where, as here, a debtor requests the authority to reimburse expense fees "for second-round 'qualified' bidders in a multiple stage auction for a very unique and very valuable but possibly worthless asset." *ASARCO LLC*, 441 B.R. at 824. For one, the break-up fee provisions at issue in *Reliant* and *O'Brien* significantly differ from the due diligence reimbursement fees at issue in this case. The break-up fees were to be paid only if the prospective bidder was unsuccessful. Here, in contrast, prospective (and qualified) bidders could be reimbursed regardless of whether they were ultimately successful. Moreover, in both *O'Brien* and *Reliant Energy* the bankruptcy court refused to approve the break-up fee in part due to the concern that the fee would "chill . . . the competitive bidding process." *O'Brien*, 181 F.3d at 529; *see also Reliant Energy*, 594 F.3d at 204. No such concern arises in this context, where ASARCO sought to *increase* competition by providing bidders an incentive to undertake the costly but necessary due diligence.

On this record, we conclude that the business judgment standard is the better fit for assessing ASARCO's reimbursement motion. Section 363 addresses

---

bankruptcy auction sales, break-up fees "are sometimes authorized . . . because they provide an incentive for an initial bidder to serve as a so-called 'stalking horse,' whose initial research, due diligence, and subsequent bid may encourage later bidders." *In re 310 Assocs.*, 346 F.3d 31, 34 (2d Cir. 2003). The break-up fee "compensates the stalking horse for the risk it shoulders in being the first bidder." *Id.*; *see also Reliant Energy*, 594 F.3d at 203 ("The practice of paying a break-up fee to an initial bidder for assets has developed . . . to compensate the bidder for memorializing its interest in acquiring the asset.").

No. 10-40930

the debtor's use of the estate property, and in its motion ASARCO sought authorization to make discretionary use of the estate's funds. Section 503, in contrast, generally applies to third parties that have already incurred expenses in connection to the debtor's estate. The unsuccessful bidders in *O'Brien* and *Reliant Energy* sought payment for expenses incurred without the court's pre-approval for reimbursement, and thus section 503 was the proper channel for requesting payment. In ASARCO's case, however, the bankruptcy court issued the Reimbursement Order *before* any potential qualified bidders, including the Intervenors, had incurred due diligence and work fees. In this context, application of the business judgment standard is appropriate.

### 3.    *Application of § 363(b)*

Appellants argue that even if section 363(b) applies in this case, there was insufficient evidence in the record to support the bankruptcy court's finding that the requested expense reimbursements had sound business justification.

As stated in the Reimbursement Order, the bankruptcy court found that ASARCO's proposed reimbursement of expenses was designed to maximize the value of ASARCO's estate, and was fair, reasonable, and appropriate. The bankruptcy court further determined that the Reimbursement Order was "in the best interests of ASARCO and its estate, creditors, interest holders, stakeholders, and all other parties in interest." On this basis, the bankruptcy court concluded that ASARCO had demonstrated a compelling and sound business justification for the reimbursement authority. Finding no clear error in the bankruptcy court's findings of fact, we defer to its findings. *Quinlivan*, 434 F.3d at 318.

The district court similarly concluded that ASARCO's reimbursement motion satisfied the business judgment standard. The court determined that there was no evidence in the record of self-dealing or manipulation among the parties who negotiated the reimbursement procedures; the Reimbursement

12

No. 10-40930

Order facilitated, not hindered, the auction process; and the approved maximum available size of the reimbursement fee was reasonable in comparison to the size of the SCC Judgment. *ASARCO LLC*, 441 B.R. at 831–33.[10]

On this record, we agree with the district court that the bankruptcy court did not err in issuing the Reimbursement Order under the business judgment standard in section 363(b).

## III

For the reasons stated above, the judgment of the district court is AFFIRMED.

---

[10] The district court also noted that the auction process had been helpful in the confirmation process, as stated by the bankruptcy court in its recommendation on the Parent's plan of reorganization: "Initiation of the auction process brought tangible benefit to the Debtor's estate and was perhaps the final impetus needed to encourage the Parent to file its plan which pays creditors in full." *ASARCO LLC*, 441 B.R. at 832 n.21.