# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-51326

United States Court of Appeals
Fifth Circuit

**FILED**

April 29, 2016

Lyle W. Cayce
Clerk

DAVID BILLINGS; TRESSA BILLINGS,

Plaintiffs - Appellants

v.

PROPEL FINANCIAL SERVICES, L.L.C.,

Defendant - Appellee

--------------------
Consolidated with 15-50199

BLANCA TORRES,

Plaintiff - Appellee

v.

PROPEL FINANCIAL SERVICES, L.L.C.,

Defendant - Appellant

--------------------
Consolidated with 15-50340

CHERYL L. THIERY,

Plaintiff - Appellee

v.

TEXAS TAX SOLUTIONS, L.L.C.,

Defendant - Appellant

--------------------
Consolidated with 15-50437

Nos. 14-51326, 15-50199, 15-50340, 15-50437

DAVID LEONARD OROSCO,

Plaintiff - Appellee

v.

OVATION LENDING, L.L.C.,

Defendant - Appellant

Appeals from the United States District Court
for the Western District of Texas

Before BARKSDALE, CLEMENT, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

These four consolidated appeals present the question of whether the Truth in Lending Act's ("TILA's")[1] disclosure and consumer-protection requirements apply to transfers of property tax liens carried out under Section 32.06 of the Texas Tax Code. We conclude that the transfer of a tax lien does not constitute an extension of "credit" that is subject to TILA. Accordingly, we AFFIRM the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) in *Billings, et. al. v. Propel Financial Services, L.L.C.*, No. 14-51326, and REVERSE the district courts' denials of defendants' motions to dismiss in *Torres v. Propel Financial Services, L.L.C.*, No. 15-50199; *Thiery v. Texas Tax Solutions, L.L.C.*, No. 15-50340; and *Orosco v. Ovation Lending, L.L.C.*, No. 15-50437.

---

[1] In addition to TILA, this case concerns the Homeowner Equity and Protection Act ("HOEPA"). *See* 15 U.S.C. §§ 1602, 1639.

2

Nos. 14-51326, 15-50199, 15-50340, 15-50437

## I. Background

*A. The Truth in Lending Act*

TILA's disclosure protections apply to the offering of "consumer credit" by "creditors" as those terms are defined in the statute. *See* 15 U.S.C. § 1602(f), (g), (i); *see also Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir. 1980).[2]  Under TILA, the term "credit" is defined as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment."  § 1602(f). TILA does not define the term "debt," and thus takes on the definition given to it by state law.  12 C.F.R. § 1026.2(b)(3) ("Unless defined . . . words used "have the meanings given to them by state law or contract").

The Consumer Financial Protection Bureau is the agency charged with interpreting TILA and promulgating rules to effectuate its purposes.  *See* 15 U.S.C. §§ 1602(b), 1604(a).  The regulations implementing TILA are known as "Regulation Z."  12 C.F.R. pt. 1026.  The staff commentary on Regulation Z expressly excludes "[t]ax liens [and] tax assessments" from the definition of "credit," but states that "third-party financing of such obligations (for example, a bank loan obtained to pay off a tax lien) is credit for purposes of the regulation."  12 C.F.R. pt. 1026, Supp. I, Subpart A, cmt. 2(a)(14)(1)(ii).

*B. Tax Lien Transfers Under Texas Law*

The statutory scheme authorizing and governing property tax loans in Texas is set out in the Texas Tax Code and Chapter 351 of the Texas Finance Code.  Texas imposes a property tax, which is secured by a "tax lien" that automatically attaches to taxable property each year "in favor of each taxing unit having power to tax the property."  TEX. TAX CODE §§ 32.01(a), 32.07(a). The property tax lien "takes priority over a homestead interest in the property"

---

[2] Because HOEPA is a part of TILA, it is subject to the same terms and definitions. Thus, any transaction that is not a "consumer credit transaction" as defined by TILA falls outside the scope of HOEPA as well.

Nos. 14-51326, 15-50199, 15-50340, 15-50437

and, with limited exceptions, over "the claim of any creditor of a person whose property is encumbered by the lien" and "the claim of any holder of a lien on property encumbered by the tax lien." § 32.05(a), (b).

When property taxes become delinquent, the owner "may authorize another person to pay the taxes," and "a tax lien may be transferred to the person who pays the taxes on behalf of the property owner." § 32.06(a-1), (a-2). To effectuate the transfer of a tax lien under Texas law, the property owner must execute and file with the appropriate taxing unit a written authorization for another person or entity (the "transferee") to pay an amount equal to the owner's property taxes. § 32.06(a-1). The transferee then pays the taxing unit, which in turn certifies that the transferee paid an amount equal to the outstanding taxes, penalties, interest, and collection costs and that the tax lien has been transferred, and issues a tax receipt to the transferee. § 32.06(b). The tax lien maintains its special priority status after it is transferred, § 32.06(c), and the transferee is subrogated to all rights and remedies of the transferring taxing unit, § 32.065(c). The transferee and property owner may contract for repayment terms, and any such contract must be recorded in the county deed records. § 32.065(b).

The Texas Tax Code includes a number of protections for property owners who use a tax lien transfer to defer payment of their property taxes. For example, the code limits the maximum interest rate a transferee may charge, § 32.06(e), and limits the types of fees that may be charged, § 32.06(e-1); TEX. FIN. CODE § 351.0021. The code also requires that transferees make certain disclosures in every tax lien transfer, including the type and approximate amount of any fees that property owners may incur in connection with the transfer. TEX. TAX CODE § 32.06(a-4), (a-5). Several provisions of the Tax Code incorporate by reference provisions of federal law

4

Nos. 14-51326, 15-50199, 15-50340, 15-50437

and apply those provisions to transferees.  *See* TEX. TAX CODE § 32.06(d-1), (f-3).

*C. Factual Background*

In each of these four consolidated cases, plaintiffs are individuals who obtained property tax loans from defendant property tax lenders in exchange for the transfer of their tax liens pursuant to Sections 32.06 and 32.065 of the Texas Tax Code.  Each loan was evidenced by a promissory note executed by the plaintiff and payable to the lender.  In each case, plaintiffs brought suit against the defendant lenders alleging, inter alia, that defendants committed TILA violations.  The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that TILA does not apply because tax lien transfers are not "consumer credit transactions" as defined by TILA.  In three of the consolidated cases, the district court denied defendants' motions to dismiss, concluding that TILA does apply to the tax lien transfers, but certified the question for immediate appeal.  In the fourth case, the district court held that because property taxes are not "debt" under Texas law, and the transfer of the tax liens to a private party does not change the nature of the tax obligation such that it becomes "debt," the transfer of a tax lien to a private lender is not a consumer credit transaction subject to TILA.  These appeals, now consolidated, followed.

II. Jurisdiction and Standard of Review

Plaintiffs allege violations of TILA, 15 U.S.C. § 1601, *et seq.*  The district court had subject matter jurisdiction under 28 U.S.C. § 1331.  We have appellate jurisdiction over plaintiffs' appeal from the district court's final judgment of dismissal in *Billings, et. al. v. Propel Financial Services, L.L.C.*, No. 14-51326, under 28 U.S.C. § 1291.  We have appellate jurisdiction over the appeals in the remaining three cases—*Torres v. Propel Financial Services, L.L.C.*, No. 15-50199; *Thiery v. Texas Tax Solutions, L.L.C.*, No. 15-50340; and

Nos. 14-51326, 15-50199, 15-50340, 15-50437

*Orosco v. Ovation Lending, L.L.C.*, No. 15-50437—under 28 U.S.C. § 1292(b), as the district court in each case certified the order denying defendants' motion to dismiss for immediate interlocutory appeal and we granted defendants' timely filed requests for permission to file interlocutory appeals. "[We] review[] de novo a district court's grant or denial of a Rule 12(b)(6) motion to dismiss, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff[s]." *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (internal quotation marks and citation omitted).

## III. Discussion

The question presented by these appeals is whether TILA governs tax lien transfers made under Section 32.06 of the Texas Tax Code. To be subject to TILA's (and HOEPA's) requirements, the tax lien transfers must constitute "consumer *credit* transactions," which turns on the meaning of the word "debt" as that word is used in TILA's definition of the term "credit." *See* 15 U.S.C. § 1602(f) (defining "credit" as "the right . . . to defer payment of *debt* or to incur *debt* and defer its payment" (emphasis added)). It is undisputed that tax obligations (and the tax liens resulting therefrom) imposed by a taxing authority are not "debt" for purposes of TILA, and, in fact, the commentary to Regulation Z excludes "[t]ax liens [and] tax assessments" from the definition of "credit." 12 C.F.R. pt. 1026, Supp. I, Subpart A, cmt. 2(a)(14)(1)(ii). Instead, the parties' arguments focus on whether the *transfer* of a tax lien to the lenders and the resulting promissory note, executed by the plaintiffs and payable to the lenders, extinguishes the original tax obligation and creates a new debt that is subject to TILA.

Defendants contend that the tax lien transfers do not constitute extensions of "credit," as that term is defined under TILA, and thus are not subject to TILA, relying on this court's holding in *Tax Ease Funding, L.P. v. Thompson* (*In re Kizzee-Jordan*), 626 F.3d 239 (5th Cir. 2010). Defendants

6

contend that *In re Kizzee-Jordan* establishes that the tax lien transfers were not extensions of "credit" under TILA because the transactions were merely transfers of tax obligations from one entity to another, and thus did not create any new "debt" that might be subject to TILA. Plaintiffs disagree, relying primarily on the staff commentary to Regulation Z, which states that "third-party financing of [tax] obligations (for example, a bank loan obtained to pay off a tax lien) is credit for purposes of the regulation." 12 C.F.R. pt. 1026, Supp. I, Subpart A, cmt. 2(a)(14)(1)(ii). Plaintiffs contend that the tax lien transfers at issue here constitute third-party financing of tax obligations, and further argue that the resulting loans are "consumer credit" because the purpose of the loans was to pay property tax obligations assessed against the property owners' homes and avoid foreclosure. We agree with defendants that this question has largely been answered by our holding in *In re Kizzee-Jordan*, 626 F.3d 239, and accordingly, we hold that tax lien transfers are not extensions of "credit" subject to TILA.[3]

In *In re Kizzee-Jordan*, we considered whether the transferee of a Texas property tax lien holds a tax claim that is protected from modification by 11 U.S.C. § 511 of the Bankruptcy Code. *Id.* at 240. The question before the court was whether, after transfer to the lender, the tax lien remained a tax claim such that § 511 applied, or whether the tax claim was extinguished and replaced by a new debt when the lender paid the taxing authorities. *Id.* at 241, 244. In answering this question, we first looked to federal bankruptcy law and concluded that "a tax claim is a broad claim for the payment of taxes and that a private entity may seek the benefit of § 511 in pursuing such a claim." *Id.* at 243. Turning next to Texas law, we noted that under Texas's tax scheme, when

---

[3] As a result, we need not reach defendants' additional arguments that the application of TILA to such transactions violates the Clear Statement Rule of statutory construction or that the property tax loans at issue are not *consumer* credit transactions.

a tax lien is transferred in exchange for payment of the taxes on behalf of the property owner, "[t]he transferee of the tax lien is then subrogated to and is entitled to exercise any right or remedy possessed by the transferring taxing unit, including or related to foreclosure or judicial sale[.]" *Id.* at 244 (alteration in original) (internal quotation marks and citation omitted). We rejected the arguments that the transferee did not hold a tax claim because only a tax *lien* is transferred under state law, and that the tax claim was extinguished and replaced by a new debt owed under the promissory note. *Id.* Importantly, we explicitly held that a tax claim is *not* extinguished when the transferee pays the property taxes to the taxing authority. *Id.*

In reaching this conclusion, we noted that, under Texas law, the tax collector issues a tax receipt to the *transferee*—not the property owner—upon the transferee's payment of the outstanding tax obligation, noting that if the tax lien were extinguished, the receipt would be issued to the property owner. *Id.* Additionally, we pointed to the fact that a lien cannot be assigned under Texas law without the underlying claim also being assigned to the new lienholder, and thus the tax lien could not be assigned if the tax claim had been extinguished by the lender's payment to the taxing authority. *Id.* at 244–45, 245 n.29. Finally, we cited the fact that, under the tax scheme, the transferee is subrogated to all the rights and remedies of the taxing authorities upon transfer of the lien, reasoning that "[i]f the tax claim were extinguished . . . and replaced by a new debt, . . . the transferee could simply prosecute the new debt[,]" and there would be no need to provide for rights of subrogation. *Id.* at 245. Thus, we held that a tax lien transfer under Texas law preserves the existing tax claim, and "changes only the entity to which the [property owners] are indebted for the taxes originally owed, not the *nature* of the underlying debt." *Id.* at 244 (emphasis added). In doing so, we rejected the argument that the lenders held something other than a tax claim because the lenders, as

8

Nos. 14-51326, 15-50199, 15-50340, 15-50437

subrogees of the taxing authority, possessed rights beyond those possessed by the taxing authority that transferred the tax lien (i.e., by statute, the lenders are permitted to charge additional closing costs and fees and can apply a higher interest rate). *Id.* at 245–46. We noted that "where a statute provides a subrogation right, its nature is governed by the terms of the statute creating the right[,]" and acknowledged that, in creating this statutory scheme, the Texas legislature granted the property tax lenders statutory subrogation rights that include any rights held by the taxing authorities, in addition to other rights the taxing authorities do not possess. *Id.* Nevertheless, we held that this "does not change the fact that the lenders are subrogated, nor does it change the nature of the underlying debt as a tax debt." *Id.* at 246. Accordingly, we concluded that the transferee held a tax claim for purposes of § 511. *Id.*

Applying our holding in *In re Kizzee-Jordan* to the instant cases, it is clear that the payments made by defendants to the relevant taxing authorities and the subsequent transfer of the tax liens and execution of the promissory notes did not extinguish the original tax obligations, but rather, simply transferred the preexisting tax obligations to new entities. Thus, the transfers and promissory notes did not *create* new debts that would be subject to TILA, but rather transferred existing tax obligations, which are not "debts" subject to TILA. Plaintiffs argue that *In re Kizzee-Jordan* is inapplicable here because it arose in the bankruptcy context and did not involve the interpretation of TILA. However, our holding in *In re Kizzee-Jordan* interpreted the impact of a tax lien transfer under the same provision of the Texas Tax Code that is applicable to the instant cases and relied largely on interpreting the Tax Code—not the Bankruptcy Code. Our ultimate holding in that case necessarily rests on the conclusion that when a lender pays a taxing authority and in exchange receives the tax lien along with an executed promissory note from

Nos. 14-51326, 15-50199, 15-50340, 15-50437

the property owner under Section 32.06 of the Texas Tax Code, the lender holds the preexisting tax claim—not a new debt arising from the execution of the promissory note. Accordingly, our holding in *In re Kizzee-Jordan* forecloses the plaintiffs' contention that TILA applies to the tax lien transfers at issue here.[4] We hold that the transfer of a property tax lien is not an extension of "credit" subject to TILA.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) in *Billings, et. al. v. Propel Financial Services, L.L.C.*, No. 14-51326, and REVERSE the district courts' denials of defendants' motions to dismiss under Rule 12(b)(6) in *Torres v. Propel Financial Services, L.L.C.*, No. 15-50199; *Thiery v. Texas Tax Solutions, L.L.C.*, No. 15-50340; and *Orosco v. Ovation Lending, L.L.C.*, No. 15-50437 and RENDER judgment dismissing those cases.

---

[4] We are not the only court to reach a similar conclusion. Defendants also rely on the Third Circuit's holding in *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 409–11 (3d Cir. 2000), that tax liens transferred to property tax lenders do not constitute "consumer credit transactions" under TILA. The Third Circuit determined that tax liens are not "debts," and therefore concluded that TILA did not apply to the payment plans at issue in the case, because "the payment plans . . . [did] not involve the granting of a right to defer payment of 'debts,' but rather the granting of a right to defer payment of tax obligations, which are not 'debts.'" *Id.* at 410. In so holding, the Third Circuit acknowledged the Staff Commentary to Regulation Z, but distinguished the payment plans at issue in *Pollice* from the scenario where the bank makes an independent loan to the property owner that the property owner then uses to pay off his or her tax obligation. In the scenario presented in *Pollice*, and in the instant cases, the tax obligation is simply transferred from the taxing authorities to the transferee lending institution, and there is no independent line of credit extended to the property owner, despite the negotiation of terms in the payment plans (or promissory notes).