

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00452-CV

1901 NW 28TH STREET TRUST            APPELLANT

V.

LILLIAN WILSON, LLC            APPELLEE

----------

### FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 096-284710-16

----------

## OPINION

----------

### I. INTRODUCTION

The trial court declared Joseph Yammine a vexatious litigant and dismissed a pro se lawsuit that he had filed as the trustee for Appellant 1901 NW 28th Street Trust. In addition to several complaints directed at the trial court and at opposing counsel, Yammine argues that Appellee Lillian Wilson, LLC failed to meet its burden under chapter 11 of the civil practice and remedies code to deem

him a vexatious litigant. We disagree, hold that Yammine failed to preserve his other issues, and will affirm.

## II. BACKGROUND

In June 2009, Yammine authorized a tax lien that had attached to 1901 NW 28th Street (the Property) to be transferred from Tarrant County to Lillian Wilson in connection with Lillian Wilson's payment of $96,256.91 in delinquent ad valorem taxes that had accrued on the Property between 1997 and 2008. To memorialize the transaction, Yammine executed a note in the modified principal amount of $107,479.10, which Lillian Wilson secured with a deed of trust and the tax lien. In the deed of trust, Yammine promised that he owned the Property and that he had the right to grant Lillian Wilson an interest in it. The deed of trust was recorded with the county clerk of Tarrant County on June 16, 2009.

On August 3, 2009, Tarrant County's tax-assessor collector executed an assignment of tax lien, acknowledging that Lillian Wilson had paid the delinquent ad valorem taxes for the Property and transferring the tax lien on the Property to Lillian Wilson, "together with all rights and remedies incident thereto." The assignment was recorded the same month.

Yammine eventually defaulted under the note, and Lillian Wilson filed an application for an expedited foreclosure of a transferred tax lien under rule of civil procedure 736, which the 153rd Judicial District Court later granted.[1] Tex. R.

---

[1]Simone Barron, who according to Lillian Wilson is Yammine's sister, represented Appellant as its purported trustee.

2

Civ. P. 736. One day before the Property was scheduled to be sold at a foreclosure sale, Yammine filed the underlying pro se lawsuit as Appellant's purported trustee, averring that Lillian Wilson had obtained the foreclosure order in violation of Appellant's due process rights and that the tax lien had not attached to the Property "because [Yammine] did not own the property at the time that the deed of trust was recorded." Lillian Wilson's attorneys called off the foreclosure sale.

Less than ninety days after filing its answer, and because Yammine had "demonstrated a pattern of filing frivolous lawsuits to prevent foreclosures," Lillian Wilson filed a motion to deem Yammine a vexatious litigant and to require him to post security. At the hearing on Lillian Wilson's motion—before he refused to testify any further—Yammine complained that he had not received adequate notice of the hearing, indicated that he needed a lawyer, requested a translator, and repeatedly claimed to have been suffering from the effects of a recent car accident.[2] The trial court proceeded with the hearing, admitted Lillian Wilson's evidence, and signed an order deeming Yammine a vexatious litigant and ordering him to post security in the amount of $15,000. Yammine ultimately failed to post the security, and the trial court signed an order dismissing his lawsuit with prejudice.

---

[2]Yammine claimed to have been suffering from the effects of a different car accident when Lillian Wilson deposed him on an earlier date.

3

### III. VEXATIOUS LITIGANT DETERMINATION

Yammine's first four issues challenge the trial court's order determining that he is a vexatious litigant.

Chapter 11 of the civil practice and remedies code contains the legislature's plan for confronting vexatious litigants—pro se individuals who abuse the legal system by pursuing numerous frivolous lawsuits. Tex. Civ. Prac. & Rem. Code Ann. §§ 11.001–.104 (West 2017); *cf. Vexatious Litigant*, Black's Law Dictionary (10th ed. 2014). The chapter permits a defendant against whom a civil action is commenced, maintained, or pending to move the trial court (not later than ninety days after answering or making a special appearance) for an order determining that the plaintiff is a vexatious litigant and requiring him to furnish security. Tex. Civ. Prac. & Rem. Code Ann. § 11.051. The defendant must show (1) that the plaintiff does not have a reasonable probability of prevailing in the litigation against the defendant and (2) that in the seven-year period immediately preceding the filing of the defendant's motion, the plaintiff "has commenced, prosecuted, or maintained at least five litigations as a pro se litigant" that were "finally determined adversely to the plaintiff," excluding any suits in small claims court. *Id.* § 11.054(1)(A).

If the trial court determines that the plaintiff is a vexatious litigant, then it must order the plaintiff to furnish security. *Id.* § 11.055. If the plaintiff does not timely furnish the security, then the trial court has no option but to dismiss the litigation as to the defendant who filed the motion, and the defendant "has

4

recourse to the security furnished by the plaintiff in an amount determined by the court."[3] *Id.* § 11.056–.057.

We review a trial court's order determining that a litigant is vexatious for an abuse of discretion. *Harris v. Rose*, 204 S.W.3d 903, 905 (Tex. App.—Dallas 2006, no pet.).

## A. Yammine is a "Plaintiff" as defined by chapter 11.

Yammine argues in his first issue that the trial court erroneously declared him a vexatious litigant because under chapter 11, only a "plaintiff" may be a vexatious litigant, and that the "plaintiff" in the underlying litigation was Appellant (a trust), not him. *See* Tex. Civ. Prac. & Rem. Code Ann. § 11.054 (identifying criteria for finding "plaintiff" a vexatious litigant). Yammine's argument overlooks that the legislature specifically defined the term "Plaintiff" in chapter 11 to mean "an individual who commences or maintains a litigation pro se." *Id.* § 11.001(5); *see Hernandez v. Ebrom*, 289 S.W.3d 316, 318 (Tex. 2009) ("If the Legislature provides definitions for words it uses in statutes, then we use those definitions in our task." (citing Tex. Gov't Code Ann. § 311.011(b) (West 2013))). Yammine is an individual who commenced a litigation. *See id.* § 11.001(2) (defining "[l]itigation" as "a civil action commenced, maintained, or pending in any state or federal court"). The only other question is whether he did so pro se. "[P]ro se" is

---

[3]The trial court may also enter a prefiling order prohibiting a vexatious litigant from filing, pro se, a new litigation without first obtaining permission to do so by the local administrative judge. Tex. Civ. Prac. & Rem. Code Ann. § 11.101(a).

not defined, so we give the term its common, ordinary meaning unless the statue clearly indicates a different result, which it does not. *See Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014). Black's defines "pro se" to mean "[f]or oneself; on one's own behalf; without a lawyer." *Pro se*, Black's Law Dictionary (10th ed. 2014).

At the hearing on Lillian Wilson's motion, Yammine acknowledged not only that he is not licensed to practice law in Texas and that he has no law degree but that he filed the underlying lawsuit pro se, i.e., without a lawyer. Yammine even indicated under his signature on the original petition that he was "Pro Se." Thus, it matters not that the underlying litigation was styled "1901 NW 28th Street Trust v. Lillian Wilson, LLC" instead of "Joseph Yammine v. Lillian Wilson, LLC," nor is it of any consequence that Yammine may not have been authorized to pursue the action on behalf of Appellant. Because Yammine commenced the litigation pro se, he is a "[p]laintiff" as the legislature defined that term in chapter 11. *See* Tex. Civ. Prac. & Rem. Code Ann. § 11.001(5). We overrule his first issue.

## B.    Lillian Wilson had a reasonable probability of prevailing.

In his fourth issue, Yammine argues that he, not Lillian Wilson, was likely to prevail in the litigation. His theory is that "[Lillian Wilson's tax] lien could not possibly attach to the property because [he] did not own the property at the time that [Lillian Wilson] filed its deed of trust."

The record shows that Yammine executed the deed of trust in favor of Lillian Wilson on June 9, 2009, and that it was recorded a week later on June 16,

6

2009. However, on June 12, 2009, four days before the deed of trust was recorded, a special warranty deed was recorded in which Yammine conveyed the Property to his brother Wahid Yammine. Excluding any consideration of whether Yammine defrauded Lillian Wilson by securing a loan for delinquent ad valorem taxes on a property that he had previously conveyed, the tax lien that Tarrant County transferred to Lillian Wilson had attached to the Property before the deed of trust was recorded in June 2009.

Chapter 32 of the Texas Tax Code covers property tax liens. Tex. Tax Code Ann. §§ 32.01–.07 (West 2015). Section 32.01 clarifies that "[o]n January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property, whether or not the taxes are imposed in the year the lien attaches." *Id.* § 32.01(a). The lien, which "exists in favor of each taxing unit having power to tax the property," is perfected "on attachment" and "requires no further action by the taxing unit," except as provided by section 32.03(b), which does not apply here. *Id.* § 32.01(a), (d). The Texas constitution classifies a tax lien as an inextinguishable "special lien." *ABN AMRO Mortg. Grp. v. TCB Farm & Ranch Land Invs.*, 200 S.W.3d 774, 779 n.3 (Tex. App.—Fort Worth 2006, no pet.) (citing Tex. Const. art. VIII, § 15).

Tax code sections 32.06 and 32.065 address tax lien transfers. When property taxes become delinquent, a property owner "may authorize another person to pay the taxes imposed by a taxing unit on the owner's real property,"

7

and "a tax lien may be transferred to the person who pays the taxes on behalf of the property owner." Tex. Civ. Prac. & Rem. Code Ann. § 32.06(a-1), (a-2). To complete the transfer, a property owner must execute and file a sworn document with the taxing unit authorizing the other person (the transferee) to pay the delinquent taxes. *Id.* § 32.06(a-1), (a-2). After the transferee pays the property taxes, the taxing unit certifies that the taxes have been paid and that the tax lien has been transferred. *Id.* § 32.06(b). Although the transferee must record a transferred tax lien in the county in which the property encumbered by the lien is located, the tax lien "maintains its special priority status after it is transferred," and "the transferee is subrogated to all rights and remedies of the transferring taxing unit." *Billlings v. Propel Fin. Servs, L.L.C.*, 821 F.3d 608, 610 (5th Cir.), *cert. denied*, 137 S. Ct. 372 (2016); *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 32.06(c), (d), 32.065(c). A taxing unit may sue to foreclose a lien securing delinquent property taxes. Tex. Civ. Prac. & Rem. Code Ann. § 33.41(a) (West 2015).

Yammine owed delinquent ad valorem taxes on the Property for the tax years 1997 through 2008. Consistent with the statutory scheme set out above, a tax lien attached to the Property on January 1 of each of those years to secure the payment of taxes on the Property. When Tarrant County transferred the tax lien to Lillian Wilson, and Lillian Wilson recorded the transfer, Lillian Wilson was subrogated to the rights and remedies of Tarrant County vis-à-vis the preexisting, previously attached special tax lien. *See Guillot v. Hix*, 838 S.W.2d 230, 232

8

(Tex. 1992) ("Generally, rights conferred by subrogation are entirely derivative of the subrogor's interests, to which the subrogee merely succeeds."). Consequently, although Lillian Wilson recorded the deed of trust several days after the special warranty deed conveying the Property from Yammine to his brother was recorded, the deed of trust did not create a new lien against the Property; rather, it merely "preserved and extended the existing tax lien" and "prescribed new terms and conditions for foreclosure."[4] *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 662 (Tex. 1996); *see In re Morales*, 520 B.R. 544, 550–52 (W.D. Tex. 2014) (reasoning similarly to determine extent of tax lien transferee's interest in real property). Once again, Yammine's argument is premised on something other than the law. We overrule his fourth issue.

**C.    Lillian Wilson met its burden under section 11.054(1)(A).**

In his third issue, Yammine argues that Lillian Wilson failed to meet its burden to show that in the seven-year period immediately preceding the filing of its motion, he had "commenced, prosecuted, or maintained at least five litigations as a pro se litigant" that were "finally determined adversely to" him. *See* Tex. Civ. Prac. & Rem. Code Ann. § 11.054(1)(A). Along with corresponding docket sheets and various pleadings, Lillian Wilson submitted nine causes endeavoring

---

[4]The deed of trust even stated, "THE TAX LIEN TRANSFERRED TO YOU [Lillian Wilson] IS RENEWED AND EXTENDED BY THE NOTE AND DEED OF TRUST UNTIL THE NOTE AND DEED OF TRUST ARE PAID."

to meet its burden under section 11.054(1)(A). Only five must meet the statute's requirements.[5]  *See id.*

Cause No. 09-44149-dml13, a personal bankruptcy filed by Yammine pro se, was ultimately dismissed.  Yammine argues that the cause was not finally determined adverse to him because it was dismissed, but as our sister court in El Paso astutely noted, "A party who repeatedly files baseless actions only to dismiss them is no less vexatious than the party who follows the actions through to completion."[6]  *Retzlaff v. GoAmerica Commc'ns. Corp.*, 356 S.W.3d 689, 700 (Tex. App.—El Paso 2011, no pet.) (quoting *Tokerud v. CapitolBank Sacramento*, 38 Cal. App. 4th 775, 779, 45 Cal. Reptr. 2d 345, 347 (1995, pet. denied), *cert. denied*, 518 U.S. 1007 (1996).  We agree.  This is a qualifying litigation under section 11.054(1)(A).

In Cause No. 067-256846-11, a "Contract, Debt/Contract" action, Yammine was originally represented by counsel, but counsel withdrew, and Yammine did not seek to dismiss the suit.  He therefore "maintained" the litigation pro se until it was ultimately dismissed.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 11.054(1);

---

[5]An employee of the Tarrant County District Clerk's office testified that Yammine had been involved as a party, but not necessarily pro se, in thirty-three different litigations, excluding those in which he may have used another name.

[6]The court suggested, however, that a dismissal should not count if it was part of a negotiated settlement that is reflected in the docket sheet.  *Retzlaff*, 356 S.W.3d at 700.

*Retzlaff*, 356 S.W.3d at 699 (looking to ordinary meaning of "'maintain'"—"'to continue (something)'"). This is a section 11.054(1)(A) qualifying litigation.

And in Cause Nos. 236-252891-11, 236-252888-11, and 236-252889-11, Yammine maintained each litigation by filing—pro se and as a counter-plaintiff— a counterclaim that was ultimately determined adverse to him when the trial court signed an order allowing foreclosure of a tax lien. *See* Tex. Civ. Prac. & Rem. Code Ann. § 11.001(2), (5) (defining "Litigation" and "Plaintiff"); *Restrepo v. Alliance Riggers & Constructors, Ltd.*, No. 08-15-00348-CV, 2017 WL 4216249, at *15 (Tex. App.—El Paso Sept. 22, 2017, no pet. h.) (reasoning that defendant/counter-plaintiff who filed counterclaim was "Plaintiff" within meaning of chapter 11). Therefore, each suit is a section 11.054(1)(A) qualifying litigation.

Lillian Wilson met its burden under section 11.054(1)(A). We overrule Yammine's third issue.

In his second issue, Yammine argues that Lillian Wilson failed to meet its burden under section 11.054(1)(A) as to Appellant, but Lillian Wilson did not file a motion seeking to declare Appellant a vexatious litigant. We overrule Yammine's second issue.

Having overruled Yammine's first, second, third, and fourth issues, we hold that the trial court did not abuse its discretion by determining that Yammine is a vexatious litigant.

11

## IV. REMAINING UNPRESERVED ISSUES

In his fifth, sixth, seventh, and eighth issues, Yammine complains that the trial court failed to give him an opportunity to hire an attorney and a translator for the hearing on Lillian Wilson's motion to declare him a vexatious litigant, that Lillian Wilson failed to notify him which witnesses would be called at the hearing on its motion, that the trial court failed to give him sufficient time to review Lillian Wilson's exhibits during the hearing on its motion, and that the trial court's order determining him to be a vexatious litigant was not sufficiently specific. Yammine failed to preserve these issues for appellate review because he did not cite even one supporting authority. *See* Tex. R. App. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (discussing "long-standing rule" that issue may be waived due to inadequate briefing). We overrule his fifth, sixth, seventh, and eighth issues.

## V. CONCLUSION

Having overruled each of Yammine's issues, we affirm the trial court's judgment.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DELIVERED: October 26, 2017

12