

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00374-CV

———————————————————

JOHN M. BACSIK, III, CHARLIE MICHEL BACSIK, AND EMILY BACSIK, Appellants

V.

TAX RESCUE II, LLC, Appellee

On Appeal from the 67th District Court
Tarrant County, Texas
Trial Court No. 067-325569-21

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Kerr

**MEMORANDUM OPINION**

After Appellants John M. Bacsik III, Charlie Michel Bacsik, and Emily Bacsik (collectively, the Bacsiks) failed to comply with the terms of a Rule 11 settlement agreement, the trial court signed a "Final Judgment for Foreclosure of Tax Liens and Order of Sale" in Appellee Tax Rescue II, LLC's favor. The Bacsiks have appealed and raise three points: (1) the judgment "is not founded on a valid lien claim"; (2) the Rule 11 settlement agreement "was not an agreement upon which judgment could be granted"; and (3) "the judgment was an improper remedy to enforce any claimed agreement." We will affirm.

## I. Background

This case arises out of two property-tax loans secured by tax liens on 1117 Harrison Avenue in Arlington, Texas (the Property), that were transferred pursuant to Section 32.06 of the Texas Tax Code.[1] *See* Tex. Tax Code Ann. § 32.06. Tax Rescue is the current servicer and holder of the loans, which are in default.

The Property was owned by John Bacsik Jr., who had authorized the tax-lien transfers and is now deceased. His children—John M. Bacsik III and Charlie Michel

---

[1]For a discussion of property-tax loans and tax-lien transfers, see *Ovation Services, LLC v. Richard*, 624 S.W.3d 610, 616–18 (Tex. App.—Tyler 2021, no pet.), and *1901 NW 28th Street Trust v. Lillian Wilson, LLC*, 535 S.W.3d 96, 100 (Tex. App.—Fort Worth 2017, no pet.). *See* Tex. Tax Code Ann. §§ 32.06 ("Property Tax Loans; Transfer of Tax Lien"), .065 ("Contract for Foreclosure of Tax Lien"). "Tax transfer lenders facilitate loans to property owners to pay off due or delinquent property taxes when the property owner cannot pay." *Ovation Servs.*, 624 S.W.3d at 613.

Bacsik—and his ex-wife Emily Bacsik sued Tax Rescue to stop it from foreclosing on the tax liens at a foreclosure sale noticed for June 1, 2021. *See* Tex. R. Civ. P. 736.11(a). The Bacsiks alleged that Tax Rescue had failed to comply with Texas Property Code notice provisions. The Bacsiks also asserted a breach-of-contract claim against Tax Rescue and sought a declaratory judgment declaring void any substitute trustee's deeds executed pursuant to any substitute trustee's sales. They also sought statutory damages and attorney's fees. Tax Rescue answered and counterclaimed for a judicial-foreclosure judgment and an order of sale.

Just before the December 2022 trial, the parties settled the lawsuit, and their attorneys signed a Rule 11 Agreement that was filed with the trial court. The Rule 11 Agreement provided as follows:

> This will confirm that the Parties have reached an agreement to settle the . . . lawsuit pursuant to the following terms:
>
> 1. Tax Rescue will arrange to have the subject loans re-financed through [a] conventional mortgage with a Deed of Trust securing the note with a corporate entity under its control to be designated at its discretion.
>
> 2. The terms of such financing will be the balance of the two tax loans as of the closing date plus 2022 taxes at 11.99% per annum for 10 years. This loan shall close on or before January 6, 2023. The Lender shall escrow for taxes and insurance.
>
> 3. The (new) Borrowers shall make a $5,000 payment prior to January 6, 2023. Such amount shall be applied first toward closing costs (recording costs, etc[.]), the setting up of an escrow account for taxes and insurance (estimated 2 months for each), and principal as noted above.

4. The (new) Borrowers shall provide a one[-]year casualty policy on the property naming the designated lender as mortgagee prior to closing.

5. The Parties shall agree to Judgment establishing fee[-]simple ownership of the property and/or provide documentation to establish the present ownership of the property[2] and removing all substitute trustee's deeds from the chain of title to the property. All designated owners must be Parties to the subject loan.

6. The financing will include language confirming subrogation of the subject tax liens.

7. The Parties will enter into a detailed Release [that] includes confidentiality and non-disparagement provisions [that] shall release all claims through the date of its execution. Tax Rescue's counsel will draft the closing documents at its expense.

8. The pending claims of the Parties shall be dismissed with [p]rejudice upon closing of the transaction.

9. Finally, if the insurance policy and $5,000 provided for above have not been paid on or before January 6, 2023, the Parties will agree to the entry of a Judgment providing for judicial tax sale based upon the amounts owed on the two loans as of 12/31/22 and the interest rate in Paragraph 2 above.

Tax Rescue secured a lender and provided the new lender's name to the Bacsiks. But despite Tax Rescue's several requests, the Bacsiks failed to provide Tax Rescue with the information and documentation necessary to complete the

---

[2]According to Tax Rescue, the Property's ownership was unclear after the original borrower, John Bacsik Jr., died intestate: "This lawsuit was brought by the deceased's children and ex-wife, Emily Bacsik. The Property was designated as the deceased's separate property in the divorce, so it is unclear the interest of the various Plaintiffs."

4

transaction and failed to make the $5,000 payment and secure the casualty insurance policy on the Property.

As a result of the Bacsiks' defaulting on the Rule 11 Agreement, Tax Rescue moved for entry of judgment in February 2023. The Bacsiks did not respond to the motion.

The trial court held a hearing on Tax Rescue's motion in March 2023 at which both the Bacsiks and Tax Rescue were present, but the court postponed ruling on the motion. The trial court heard the motion again in June 2023; this time, the Bacsiks did not appear. After that hearing, the trial court signed a "Final Judgment for Foreclosure of Tax Liens and Order of Sale" against the Bacsiks in rem. The Bacsiks timely moved for a new trial, which the trial court denied after a hearing in October 2023. The Bacsiks timely appealed and challenge the trial court's rendering the foreclosure judgment based on the Rule 11 Agreement.

## II. Standard of Review and Applicable Law

We review a trial court's decision enforcing a Rule 11 agreement for an abuse of discretion. *See Mantas v. Fifth Ct. of Appeals*, 925 S.W.2d 656, 659 (Tex. 1996) (orig. proceeding); *Harrison v. Freehill*, No. 03-21-00249-CV, 2022 WL 12069261, at *4 (Tex. App.—Austin Oct. 21, 2022, no pet.) (mem. op.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude

5

that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

Rule 11 is "an effective tool for finalizing settlements by objective manifestation so that the agreements 'do not themselves become sources of controversy.'" *Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 768 (Tex. 2007) (quoting *Kennedy v. Hyde*, 682 S.W.2d 525, 530 (Tex. 1984)). A Rule 11 agreement is enforceable if it is (1) in writing, (2) signed, and (3) filed in the trial court's record. *See* Tex. R. Civ. P. 11 ("Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."). A Rule 11 settlement agreement must contain all the essential settlement terms. *See Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). Essential terms are those terms that the parties "would reasonably regard as vitally important elements of their bargain," including "payment terms and release of claims." *Innovative Vision Sols., LLC v. Kempner*, No. 01-20-00195-CV, 2022 WL 868130, at *6 (Tex. App.—Houston [1st Dist.] Mar. 24, 2022, no pet.) (mem. op.) (citations omitted). Courts construe Rule 11 settlement agreements as they do contracts. *Id.*

"A trial court has a ministerial duty to enforce a valid Rule 11 agreement." *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 309 (Tex. App.—Houston

6

[1st Dist.] 2005, pet. denied) (op. on reh'g) (citing *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 91 (Tex. 1996); and then citing *Fed. Lanes, Inc. v. City of Houston*, 905 S.W.2d 686, 690 (Tex. App.—Houston [1st Dist.] 1995, no writ)). But a Rule 11 agreement cannot serve as a basis for an agreed judgment if a party withdraws its consent before the trial court has rendered judgment. *Padilla*, 907 S.W.2d at 461–62; *Henry v. City of Fort Worth*, No. 2-09-065-CV, 2010 WL 598594, at *4 (Tex. App.—Fort Worth Feb. 18, 2010, pet. denied) (mem. op.). Although a trial court is not precluded from enforcing a Rule 11 agreement once it has been repudiated by one of the parties, an action to enforce a Rule 11 agreement to which consent has been withdrawn must be based on proper pleading and proof. *See Padilla*, 907 S.W.2d at 462; *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983). In other words, a party seeking to enforce a Rule 11 agreement after the other party has revoked its consent "must pursue a separate breach-of-contract claim, which is subject to the normal rules of pleading and proof." *Mantas*, 925 S.W.2d at 658. "However, once the trial court renders judgment based on a rule 11 settlement agreement, the parties cannot revoke their consent to the agreement." *Henry*, 2010 WL 598594, at *4 (citing *Alcantar v. Okla. Nat'l Bank*, 47 S.W.3d 815, 821 (Tex. App.—Fort Worth 2001, no pet.)).

### III. Analysis

In three points, the Bacsiks argue that the trial court abused its discretion by rendering the foreclosure judgment because (1) the judgment was based on an invalid lien claim; (2) the Rule 11 Agreement was unenforceable; and (3) Tax Rescue could

7

enforce the Rule 11 Agreement only by pursuing a separate breach-of-contract claim.[3]

We address these points in reverse order because doing so aids in our disposition of this appeal.

In their third point, the Bacsiks assert that the trial court abused its discretion by rendering the foreclosure judgment "because the judgment was an improper remedy to enforce any claimed agreement." The Bacsiks argue that because they revoked their consent to the Rule 11 Agreement, Tax Rescue could enforce the Rule 11 Agreement only by pursuing a separate breach-of-contract claim. The Bacsiks

---

[3]In the "Statement of the Case" section of their brief, the Bacsiks state that

> This is a most unusual case, where the trial court did not dismiss [the] Bacsik[s'] claims but merely granted Tax Rescue the right to foreclose tax liens on what is properly [the] Bacsik[s'] real property. . . . After further review of the Judgment, undersigned counsel believes it is at minimum very arguable that the Judgment is not in fact final and appealable, since it addresses none of the claims of [the] Bacsik[s] in the suit, but merely contains the formulaic recitation that the Judgment is final and appealable. [Footnotes omitted.]

The judgment here states, "This judgment finally disposes of all claims and all parties and is appealable." It is thus a final judgment. *See, e.g.*, *In re Elizondo*, 544 S.W.3d 824, 826 (Tex. 2018) (orig. proceeding); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex. 2001). If the Bacsiks mean to argue that the judgment is erroneously final, *cf. G & H Towing Co. v. Magee*, 347 S.W.3d 293, 298 (Tex. 2011) ("When a trial court grants more relief than requested and, therefore, makes an otherwise partial summary judgment final, that judgment, although erroneous, is final and appealable."), this is the only place in their brief that they raise this argument. It is not a subsidiary question that is fairly included in their points presented, *see* Tex. R. App. P. 38.1(f), and the Bacsiks make no argument or cite any supporting authority, *see* Tex. R. App. P. 38.1(i). We thus overrule this issue, to the extent it is one, as inadequately briefed. *See Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.) (stating that the "[f]ailure to cite applicable authority or provide substantive analysis waives an issue on appeal").

8

contend that they revoked their consent to the Rule 11 Agreement because they "did not agree to entry of a consent judgment, in particular at the original hearing of March 24, 2023, where [the] Bacsik[s] objected to entry and the trial court did not act."

A party reserves the right to revoke its consent to a Rule 11 agreement at any time before judgment is rendered. *See Quintero*, 654 S.W.2d at 444. But "[a] withdrawal of consent must be effectively communicated to the trial court." *Baylor Coll. of Med. v. Camberg*, 247 S.W.3d 342, 346 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Here, we have no reporter's record of the March 2023 hearing.[4] When a reporter's record is necessary for appellate review of an issue and we do not have a reporter's record, we presume the missing record supports the trial court's judgment. *See B.F. v. A.F.*, No. 02-16-00133-CV, 2017 WL 2375767, at *1 (Tex. App.—Fort Worth June 1, 2017, no pet.) (mem. op.); *see also* Tex. R. App. P. 37.3(c). In fact, the trial-court judge had a different recollection of the March 2023 hearing: during the October 2023 hearing on the Bacsiks' new-trial motion, the trial-court judge explained that he had postponed ruling on Tax Rescue's enforcement motion at the March 2023 hearing

---

[4]Based on the court reporter's invoice that the Bacsiks filed with us to prove that they had paid for the preparation of the reporter's record, it appears that the Bacsiks asked the court reporter to prepare transcripts of the June 22, 2023 and October 5, 2023 hearings but not of the March 24, 2023 hearing. *See* Tex. R. App. P. 13.1(d), 34.6(a)(1), (b), 35.3(b). The Bacsiks have not complained that the court reporter filed an incomplete record, nor have they sought to supplement the record. *See* Tex. R. App. P. 34.6(d); *cf. Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) ("The burden is on the appellant to see that a sufficient record is presented to show error requiring reversal.").

because the parties were still "trying to work it out." This does not indicate that the Bacsiks had affirmatively withdrawn their consent to the Rule 11 Agreement. At no time during that hearing did the Bacsiks communicate to the trial court that they had revoked their consent to the Rule 11 Agreement, and there is no evidence in the record indicating that the Bacsiks had done so before the trial court rendered the foreclosure judgment. *See Gonzalez v. Wells Fargo Bank, N.A.*, 441 S.W.3d 709, 714 (Tex. App.—El Paso 2014, no pet.) ("Appellants fail to point us to anything in the record—beyond the failure of Appellants' counsel to sign the Agreed Judgment— indicating that they affirmatively withdrew their consent to the Agreed Judgment and conveyed this withdrawal to the trial court prior to rendition of judgment, as is required for Rule 11 settlement agreements."); *Clanin v. Clanin*, 918 S.W.2d 673, 677 (Tex. App.—Fort Worth 1996, no writ) ("[I]n this case, there is no evidence whatsoever in the record of appellant's objection or any other evidence present in the record that appellant made known to the court that he was withdrawing his consent to the [Rule 11] agreement. Appellant's contention that he objected at the hearing on Appellee's motion for judgment is not supported by the record."). Because the Bacsiks did not withdraw their consent to the Rule 11 Agreement, Tax Rescue was not required to pursue a separate breach-of-contract claim to enforce the agreement. We overrule the Bacsiks' third point.

In their second point, the Bacsiks argue that the trial court abused its discretion by rendering the foreclosure judgment because the Rule 11 Agreement was

10

unenforceable. They offer two reasons to support this contention. First, they argue that the Rule 11 Agreement lacked the "elements of contract applicable to the circumstances of the parties in the instant suit," specifically "a definitive closing date" and "a definitively identified lender." Second, they contend that Tax Rescue did not comply with its obligations under the Rule 11 Agreement because it never tendered closing documents to the Bacsiks and because "[t]he purported agreement extends to removal of the Trustee's Deed from the record of title to the Property . . . but the Judgment does not address the Trustee's Deed."

In its enforcement motion, which was supported by attached evidence, Tax Rescue explained that

> The terms of the settlement agreement provided that the subject loans would be refinanced by a third party designated by Tax Re[s]cue II, LLC, and the title issues would be resolved via [an] Agreed Judgment. The funding and closing of the loan were to have occurred on or before January 6, 2023. Due to the holiday season, the closing did not occur, and the undersigned suggested that the closing be extended for two weeks and requested information necessary to prepare documentation and close the transaction. From January 6, 2023, until [February 24, 2023,] on at least 5 occasions, the undersigned requested the necessary information and documentation to close the transaction from opposing counsel. . . .

> The required information included the names of the Borrowers, the parties in whom title to the property would vest, and a casualty insurance policy which was required in the settlement agreement. The policy was needed in order to ascertain the escrow accounting on the loan and, as such, the final principal amount. Final preparation of the settlement documents and loan documents **could not** occur without this information.

> To date, this information has not been provided and the proposed initial payment of the settlement, $5,000, has not been received. As such, pursuant to the settlement agreement, Tax Rescue II, LLC, requests that this Court enter Judgment providing for judicial tax sale foreclosure of the subject property at the amounts agreed upon. . . .

Although Tax Rescue secured a new lender and provided that lender's name to the Bacsiks, the Bacsiks failed to provide Tax Rescue with the information it needed to prepare the loan and settlement documents. Moreover, the Bacsiks failed to make the $5,000 payment and to secure a one-year casualty insurance policy on the Property. Because the Rule 11 Agreement provided that if the Bacsiks did not make that payment and secure the insurance policy, the parties "will agree to the entry of a Judgment providing for [a] judicial tax sale," the trial court did not abuse its discretion by rendering the foreclosure judgment. We overrule the Bacsiks' second point.

The Bacsiks argue in their first point that the trial court abused its discretion by rendering the foreclosure judgment because the judgment was based on an invalid lien claim. According to the Bacsiks, "no valid sale can now occur" under the judgment because an August 2017 substitute trustee's deed conveying the Property to an entity named 2012 Casita, LLC is in the Property's chain of title and has not been removed because "[t]he attempted rescission of the [t]rustee's [d]eed by Tax Rescue and its affiliate, 2012 Casita, LLC" was ineffective.

The Bacsiks' argument, however, refers to and is based on documents that were not before the trial court and that are outside of the record. Because those

documents are not in the record, we cannot consider them. *See Sharma v. Chadha*, No. 02-15-00033-CV, 2015 WL 5766901, at *2 (Tex. App.—Fort Worth Oct. 1, 2015, no pet.) (mem. op.) (explaining that we cannot consider documents that are outside of the record or statements about them); *Greystar, LLC v. Adams*, 426 S.W.3d 861, 865 (Tex. App.—Dallas 2014, no pet.) ("It is well-established an appellate court may not consider matters outside the record, which includes documents attached to a brief as an exhibit or an appendix that were not before the trial court."); *see also* Tex. R. App. P. 34.1 (stating that appellate record consists of clerk's record and, when necessary, reporter's record). Moreover, the Bacsiks do not explain how these alleged chain-of-title issues affect the validity of Tax Rescue's tax liens and Tax Rescue's ability to foreclose on them. *See* Tex. Tax Code Ann. §§ 32.06, .065. Accordingly, we overrule the Bacsiks' first point.

## IV. Conclusion

Having overruled the Bacsiks' three points, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: July 11, 2024

13